## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ENTREPRENEUR MEDIA, INC., | Civil Action No. 16 Civ. 2640 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| THE ROOS COHEN GROUP, LLC | |
| Defendant. | |

## COMPLAINT

Plaintiff Entrepreneur Media, Inc., by and through its undersigned attorneys, for its Complaint against Defendant The Roos Cohen Group, LLC, alleges as follows:

### NATURE OF ACTION

1.      Plaintiff Entrepreneur Media, Inc. ("EMI") brings this complaint against Defendant for (i) federal trademark infringement and false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq*.; (ii) dilution under N.Y. Gen. Bus. § 360-1; and (iii) common law trademark infringement and unfair competition under New York law.

### THE PARTIES

2.      EMI is a California corporation with its principal place of business at 18061 Fitch Avenue, Irvine, California 92614.

3.      On information and belief, The Roos Cohen Group, LLC ("Defendant") is a limited liability company whose principal place of business is at 1 Carlton Avenue, Brooklyn, New York 11205.

4.      Defendant applied to register the EVOLVING ENTREPRENEUR mark with the United States Patent and Trademark Office (App No. 86/513886 ) on January 26, 2015.

5.     On information and belief, Defendant uses the EVOLVING ENTREPRENEUR mark (the "Infringing Entrepreneur Mark") in commerce throughout the United States with various goods and services as fully detailed below.

## JURISDICTION AND VENUE

6.     Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over EMI's claims for relief for violation of the Lanham Act.  Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction over EMI's state law trademark infringement claim because it is joined with substantial and related claims under the Lanham Act.  This Court also has supplemental jurisdiction over EMI's state law claim pursuant to 28 U.S.C. § 1367(a) because all of EMI's claims arise out of a common nucleus of operative facts.

7.     This Court has personal jurisdiction over the Defendant because it resides and conducts business in this State.

8.     Venue in this Court exists under (i) 28 U.S.C. § 1391(b)(1) as Defendant resides in this District, and (ii) 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to EMI's claims occurred within this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### EMI and its Successful ENTREPRENEUR® Brand

9.     For over thirty years, EMI (together with its predecessor companies) has published magazines and books, which provide editorial content and other information, as well as offer products and services related, or of interest, to businesses, business owners, and prospective business owners.

10.     EMI's longstanding marketing and sales efforts have been conducted primarily under the mark ENTREPRENEUR® (the "ENTREPRENEUR Mark").

11.     EMI is the publisher of ENTREPRENEUR® magazine and other publications incorporating the ENTREPRENEUR name in their titles.  ENTREPRENEUR® magazine is published monthly with a current print and digital paid circulation, including both subscriptions

Complaint
Demand for Jury Trial

and single-copy sales, of more than 650,000 in the United States and worldwide. ENTREPRENEUR® magazine is sold and distributed in over 100 foreign countries.

12.    ENTREPRENEUR® magazine routinely features articles about and interviews with some of the biggest names in the business community, including Richard Branson, skateboarding icon Tony Hawk, NFL quarterback Drew Brees, and hip hop mogul Russell Simmons:



13.    ENTREPRENEUR® magazine also annually publishes, and has continuously published for over thirty years, the highly anticipated Franchise 500® ranking of America's top franchises using EMI's top-secret formula:



14.    EMI also publishes and distributes within the United States and worldwide over 200 book titles under the ENTREPRENEUR Mark and ENTREPRENEUR PRESS® imprint:

Complaint
Demand for Jury Trial

  

15.     EMI has also launched many of its most successful titles as e-books:



16.     EMI also conducts seminars, workshops, and other educational programs geared towards teaching others to successfully start and operate businesses.  These events have included: (i) the *Entrepreneur® Masters & Mentors* seminar series sponsored by Cathay Pacific and Nissan, (ii) *Entrepreneur® Magazine's GrowthCon* conference sponsored by Canon USA, and (iii) the *Entrepreneur 360™* , a conference sponsored by The Lincoln Motor Company, Canon USA, AXA Financial, and American Airlines..

17.     EMI operates a number of websites to further disseminate and market its content and services, including *Entrepreneur.com* and *EntrepreneurBookstore.com.*

18.     The website at *Entrepreneur.com* has averaged more than 20 million unique visitors and more than 59 million page views per month over the last six months.

19.     EMI has also launched apps for iPhones/ iPads, Android, and Blackberry:



Complaint
Demand for Jury Trial

20.    EMI's fame and high-quality content and services have resulted in numerous co-branding business relationships with some of the top names in news and business.  These co-branding relationships have most recently included: (i) contests sponsored by General Motors and Canon USA; (ii) content provided and branded by CNBC, Reuters, NFL Players Association, and Business Insider; (iii) Princeton Review (ranking top entrepreneurial schools); (iv) Great Place to Work® (annual Best Small & Medium Workplaces rankings); (v) Palo Alto Software (Entrepreneur Magazine's Business Plan Pro® software); and (vi) an online forms and documents service with SeamlessDocs.

21.    Through careful cultivation of its various products and services, EMI has developed an outstanding reputation as an innovator in the field of business start-up and strategy and has established an extremely loyal customer following.

22.    EMI has received a tremendous amount of public recognition and acclaim for the products sold and services provided under its ENTREPRENEUR Mark.  Through EMI's widespread and continuous use of the ENTREPRENEUR Mark, it has acquired extensive goodwill, developed a high degree of distinctiveness, and become famous, well known, and recognized as identifying goods and services that originate from EMI.

23.     The fame and quality of the products and services bearing the ENTREPRENEUR Mark have been widely recognized through industry awards and commendations.  For example, ENTREPRENEUR® magazine was a finalist in two categories in Folio's 2010 Eddie & Ozzie magazine awards, has been named one of the top performing magazines for four years in "Capell's Circulation Report," and has been honored for its content by receipt of the prestigious Maggie award in 2008, 2009, 2010, and 2011 from the Western Publishing Association.  EMI's website at *Entrepreneur.com* has been awarded "Outstanding Achievement in Web Development" by the Web Marketing Association, and its networking website under the ENTREPRENEUR CONNECT Mark was voted the #1 "Top 10 Social Networks for Entrepreneurs" by Mashable.com.  EMI has also received multiple Integrated Marketing Awards from MIN for its magazine and website, including being selected as an awards finalist in 2015.

Complaint
Demand for Jury Trial

24.     In addition, both ENTREPRENEUR® magazine and the *Entrepreneur.com* website have been named to BtoB magazine's 2010, 2011, and 2012 lists of the top 50 media outlets for business-to-business advertising.  EMI's management and staff have also been recognized for their contributions to publishing and the media industry, including such awards and recognitions in 2015 as (i) Folio's designation of an EMI staff writer as one of the "Top Women in Media", and (ii) Fast Company's recognition on Twitter of EMI's Editor-in-Chief  as one of the  "25 Smartest Women in Media."

### EMI's Intellectual Property Rights

25.     EMI owns, and has obtained United States federal registrations for, the ENTREPRENEUR Mark, as well as a family of related marks incorporating the term ENTREPRENEUR, as follows:

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16:  Paper goods and printed matter; namely magazines, books and published reports pertaining to business opportunities<br>First Use in Commerce: May 2, 1978 | 1453968<br><br>Aug. 25, 1987 |
| ENTREPRENEUR | 35:  Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers; web advertising services, namely, providing active links to the websites of others<br>First Use in Commerce: July 1992 | 2263883<br><br>July 27, 1999 |

Complaint
Demand for Jury Trial

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 35:  Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely the start-up and operation of small business enterprises<br>41:  Educational services, namely, conducting seminars on the development and operation of businesses, and conducting work shops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning and insurance<br>First Use in Commerce: October 18, 1991 | 2502032<br><br>Oct. 30, 2001 |
| ENTREPRENEUR | 38:  Streaming of video and digital material on the Internet<br>First Use in Commerce: August 2007 | 4260948<br><br>Dec. 18, 2012 |
| ENTREPRENEUR | 9:  Downloadable computer software and software for mobile devices for the reproduction, display and distribution of digitized content<br>First Use in Commerce: June 2008 | 4345424<br><br>June 4, 2013 |
| ENTREPRENEUR BOOKSTORE | 35: Online ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to starting and operating a business and other topics concerning and of interest to entrepreneurs, new and existing businesses, and members of the general public | 4612937<br>September 30, 2014 |
| EP Entrepreneur Press | 16:  Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public<br>35:  On-line ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to the subjects of starting, running and operating a business and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public | 3,470,063<br><br>July 22, 2008 |

Complaint
Demand for Jury Trial

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR PRESS | 16:  Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public First Use in Commerce: April 1999 | 3470064  July 22, 2008 |
| ENTREPRENEUR'S STARTUPS | 16:  Paper goods and printed matter; namely, magazines, books, booklets and published reports pertaining to business opportunities First Use in Commerce: January 27, 2006 | 3204899  Feb. 6, 2007 |
| ENTREPRENEUR'S STARTUPS | 9:  Downloadable computer software and software for mobile devices for the reproduction, display, distribution, and sharing of digitized content; downloadable electronic publications, namely, magazines in the fields of business, finance, sales, marketing, current events, lifestyle issues, and developments in science and technology | 4532577 May 20, 2014 |

26.     The above marks are collectively referred to as the "EMI Marks."  The above registrations are collectively referred to as the "EMI Registrations."

27.     EMI's three registrations for the ENTREPRENEUR Mark (Nos. 1453968; 2263883; 2502032) and several other of the foregoing registrations are also incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as well as EMI's entitlement to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

28.     Further, the EMI Registrations constitute prima facie evidence that the marks are valid, and that EMI is entitled to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

29.     EMI, and its predecessors in interest, have been and are now engaged in the business of developing, creating, distributing, marketing, advertising, and selling a wide variety of goods and services under the EMI Marks, and in particular under the ENTREPRENEUR

Complaint
Demand for Jury Trial

Mark.  In fact, EMI has been using the ENTREPRENEUR Mark in commerce for over thirty years, having first adopted that mark for magazines at least as early as May 2, 1978, and it has become famous, well known, and recognized as identifying goods and services that originate from EMI.

30.     Through careful cultivation of its goods and services provided under the EMI Marks, and in particular the ENTREPRENEUR Mark, EMI has developed an outstanding reputation as an innovator in the field of business start-up and strategy and has established an extremely loyal customer following.  Through EMI's widespread and continuous use of its family of EMI Marks, these marks have acquired extensive goodwill, developed a high degree of distinctiveness, and become well-known and recognized as identifying goods and services that originate from EMI.

31.     Numerous courts have recognized the strength of the EMI Marks, including:

i.     The U.S. District Court for the Central District of California held that "[t]he extensive advertising and public recognition over the past 25 years have established [the ENTREPRENEUR® Mark] as a strong mark in the industry"; the ENTREPRENEUR® Mark "is a strong distinctive mark, deserving of significant protection"; and the ENTREPRENEUR Mark "has acquired secondary meaning."  *Entrepreneur Media, Inc. v. Smith*, No. 98-3607, 2004 U.S. Dist. Lexis 24078, *9-10, 13 (C.D. Cal. June 23, 2004).

ii.     The Ninth Circuit reviewed the District Court's findings and affirmed them on appeal.  *Entrepreneur Media, Inc. v. Smith*, 101 Fed. Appx. 212, 215 (9th Cir. 2004).

iii.     Both a Magistrate Judge and District Court Judge in the Eastern District of Virginia found the ENTREPRENEUR Mark to be distinctive.  *Entrepreneur Media, Inc. v. seattleentrepreneur.com*, No. 11-00409, Docket No. 22 (E.D. Va. Dec. 6, 2011).

iv.     The U.S. District Court for the District of Maryland has twice recognized the EMI Marks as valid, strong, and distinctive.  *Entrepreneur Media, Inc. v. JMD*

Complaint
Demand for Jury Trial

*Entertainment Group, LLC, et al.*, No. RDB-12-1970, Docket No. 30 (D. Md. July 23, 2013); *Id.* Docket No. 47 (April 7, 2014).

v.    The U.S. District Court for the District of Connecticut has recognized that "the EMI Marks, and in particular the ENTREPRENEUR Mark, have acquired extensive goodwill, developed a high degree of distinctiveness and secondary meaning, and become well known and recognized as identifying goods and services that originate from EMI, such that they are deserving of strong protection."  *Entrepreneur Media, Inc. v. Whitehill et al.*, No. 13-cv-01819(MPS), Docket No. 19 (D. Conn. Aug. 19, 2015).

### Defendant' Unauthorized Use of EMI's Marks

32.    On information and belief, Defendant offers strategic planning and educational services for small businesses under the Infringing Entrepreneur Mark.

33.    Defendant uses the Infringing Entrepreneur Mark on its *evolvingentrepreneur.com* website with a wide variety of goods and services, including but not limited to: training programs, workshops, and educational materials, as shown here:



(http://www.evolvingentrepreneur.com, Last Visited May 17, 2016)

Complaint
Demand for Jury Trial

34.     Defendant also promotes and use the Infringing Entrepreneur Mark on social media websites, including but not limited to YouTube, Facebook, Twitter, and LinkedIn (collectively, the "Social Media Accounts"), as shown here:



(https://www.youtube.com/watch?v=o4V1L0h3lIE, Last Visited May 17, 2016)



(https://www.facebook.com/EvolvingEntrepreneur/?fref=photo, Last Visited May 17, 2016)

Complaint
Demand for Jury Trial



(https://twitter.com/YourEvolvedBiz, Last Visited May 17, 2016)



(https://www.linkedin.com/company/evolving-entrepreneur, Last Visited May 17, 2016)

Complaint
Demand for Jury Trial

35.     Defendant filed a federal trademark application for the Infringing Entrepreneur Mark: EVOLVING ENTREPRENEUR (No. 86/513886) on January 26, 2015 (the "Infringing Entrepreneur Trademark Application").  On May 25, 2016, EMI opposed the Infringing Entrepreneur Trademark Application.

36.     Given EMI's renown, online presence, and its long history of providing articles, profiles, newsletters, and information for businesses, as well as hosting seminars and other educational events, EMI is very concerned that consumers will likely suffer confusion and mistakenly believe that Defendant and its goods and services are endorsed, approved, or sponsored by, or affiliated, connected, or associated with EMI.

37.     Defendant will thus enjoy the benefits of EMI's reputation and goodwill based on this consumer confusion, to EMI's detriment.

38.     EMI attempted to contact Defendant several times to express EMI's concerns regarding this potential for confusion, but Defendant did not respond and has refused to cease use or abandon its application for the Infringing Entrepreneur Mark.

## EMI Is Suffering Harm from

## Defendant's Continuing Infringement and Unlawful Conduct

39.     Defendant's continued use of the confusingly similar Infringing Entrepreneur Mark in commerce violates EMI's valuable intellectual property rights in the EMI Marks and EMI Registrations, and Defendant's knowing, intentional, willful, and malicious use of this mark is damaging EMI.

40.     Due to Defendant's continuing willful infringement and unlawful conduct, EMI is now forced to bring this Complaint to protect its valuable and longstanding intellectual property rights.  EMI had to retain counsel and incur substantial fees and costs (and it continues to incur those fees and costs) to prosecute this suit and pursue its claims.

41.     EMI's interest in protecting its intellectual property rights and its products and services from consumer confusion outweigh any harm to Defendant.  The public interest is best served by granting EMI's requested relief against Defendant.

///

Complaint
Demand for Jury Trial

## FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement – 15 U.S.C. § 1114

42.     EMI incorporates by reference the factual allegations set forth above.

43.     EMI owns the EMI Marks and the EMI Registrations.  The trademarks reflected in the EMI Registrations are strong and distinctive and designate EMI as the source of all products and services advertised, marketed, sold, or used in connection with the EMI Marks.  In particular, the ENTREPRENEUR Mark has been used for over thirty years and has been recognized by federal courts as a strong and distinctive mark.

44.     EMI is the senior user of the EMI Marks as it began use of those marks in interstate commerce prior to Defendant's first use of the confusingly similar Infringing Entrepreneur Mark.

45.     Defendant does not have authorization, license, or permission from EMI to market and sell its products and services under the Infringing Entrepreneur Mark, which is confusingly similar to the EMI Marks, including the ENTREPRENEUR Mark, and is used with products and services that are identical and/or closely related to the particular products and services associated with the EMI Marks, particularly the ENTREPRENEUR Mark.

46.     Defendant was aware of the EMI Marks, particularly the ENTREPRENEUR Mark, as Defendant was on constructive notice based on EMI's longstanding federal registrations, as well as on actual notice based on EMI's numerous communications to Defendant about this issue.  Thus, Defendant's unauthorized use of the confusingly similar Infringing Entrepreneur Mark was and is knowing, intentional, and willful.

47.     As a direct and proximate result of Defendant's wrongful conduct, EMI has been and will continue to be damaged.

48.     Defendant's actions thus constitute trademark infringement.

49.     Unless an injunction is issued enjoining any continuing or future use of the confusingly similar Infringing Entrepreneur Mark by Defendant, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably damage EMI.

Complaint
Demand for Jury Trial

50.     Defendant's activities have caused and will continue to cause irreparable harm to EMI, for which it has no adequate remedy at law, because: (i) the EMI Marks, and in particular and the ENTREPRENEUR Mark, comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendant's infringement constitutes interference with EMI's goodwill and customer relationships and will substantially harm EMI's reputation as a source of high-quality goods and services; and (iii) Defendant's wrongful conduct, and the damages resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

51.     Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order: (i) requiring Defendant to account to EMI for any and all profits derived from its infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EMI that were caused by Defendant's conduct.

52.     Defendant's conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), EMI is therefore entitled to an award of treble damages against Defendant.

53.     Defendant's acts make this an exceptional case under 15 U.S.C. § 1117(a); thus EMI is entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Federal Unfair Competition/False Designation of Origin – 15 U.S.C. § 1125(a)

54.     EMI incorporates by reference the factual allegations set forth above.

55.     The EMI Marks, and in particular the ENTREPRENEUR Mark, are strong and distinctive and designate EMI as the source of all goods and services advertised, marketed, sold, or used in connection with those marks.  In addition, by virtue of EMI's decades-long use of the ENTREPRENEUR Mark in connection with its products and services, and its extensive marketing, advertising, promotion, and sale of its products and services under that mark, the EMI Marks, and in particular the ENTREPRENEUR Mark, have acquired secondary meaning, whereby the consuming public of this District, the State of New York, and the United States, associate the EMI Marks with a single source of products and services.

56.     EMI is the senior user of the EMI Marks as it began use of those marks in interstate commerce prior to Defendant's first use of the confusingly similar Infringing Entrepreneur Mark.

57.     Defendant was aware of the EMI Marks, and in particular the ENTREPRENEUR Mark, as Defendant was on constructive notice based on EMI's longstanding federal registrations, as well as on actual notice based on EMI's numerous communications to Defendant about this issue.  Thus, Defendant's unauthorized use of the confusingly similar Infringing Entrepreneur Mark was and is knowing, intentional, and willful.

58.     On information and belief, through its use of the confusingly similar Infringing Entrepreneur Mark, Defendant intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that EMI somehow authorized, originated, sponsored, approved, licensed, or participated in Defendant's use of the confusingly similar Infringing Entrepreneur Mark.

59.     In fact, there is no connection, association, or licensing relationship between EMI and Defendant, nor has EMI ever authorized, licensed, or given permission to Defendant to use the confusingly similar Infringing Entrepreneur Mark in any manner.

60.     On information and belief, Defendant's use of the confusingly similar Infringing Entrepreneur Mark will likely cause confusion as to the origin and authenticity of Defendant's website, events, and related goods and services and will likely cause others to believe that there is a relationship between Defendant and EMI when there is, in fact, not.

61.     As a direct and proximate result of Defendant's wrongful conduct, EMI has been and will continue to be damaged.

62.     Defendant's actions thus constitute false designation of origin and unfair competition.

63.     Defendant's activities have caused, and will continue to cause, irreparable harm to EMI, for which it has no adequate remedy at law, in that: (i) the EMI Marks, including the ENTREPRENEUR Mark, comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendant's infringement constitutes interference with EMI's

Complaint
Demand for Jury Trial

goodwill and customer relationships and will substantially harm EMI's reputation as a source of high-quality goods and services; and (iii) Defendant's wrongful conduct, and the damages resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

64.     Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order: (i) requiring Defendant to account to EMI for any and all profits derived from its actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EMI that were caused by Defendant's conduct.

65.     Defendant's conduct was and is intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), EMI is therefore entitled to an award of treble damages against Defendant.

66.     Defendant's acts make this an exceptional case under 15 U.S.C. § 1117(a); thus EMI is entitled to an award of attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

### Dilution Under N.Y. Gen. Bus. § 360-1

67.     EMI incorporates by reference the factual allegations set forth above.

68.     As determined by two federal courts, EMI's ENTREPRENEUR® Mark is distinctive and has acquired secondary meaning.  This mark is capable of being diluted.

69.     Defendant's use of the name EVOLVING ENTREPRENEUR is likely to dilute the distinctive quality of EMI's ENTREPRENEUR® Mark, and therefore violates N.Y. Gen. Bus. § 360-1.

70.     EMI is accordingly entitled to injunctive relief.  Unless an injunction is issued enjoining Defendant's diluting conduct, EMI will continue to be damaged irreparably.  EMI has no adequate remedy at law.

71.     Defendant's acted with knowledge; thus EMI is also entitled to punitive damages under N.Y. Gen. Bus. § 360-m.

Complaint
Demand for Jury Trial

## FOURTH CLAIM FOR RELIEF

### Common Law Trademark Infringement

72.     EMI incorporates by reference the factual allegations set forth above.

73.     EMI has valid and protectable common law rights in the EMI Marks.

74.     EMI is the senior user of the EMI Marks.

75.     Defendant's conduct constitutes infringement of EMI's common law rights in the EMI Marks.

76.     Defendant's use of the EMI Marks on unauthorized goods and services is likely to cause confusion as to the origin of Defendant's goods and services and is likely to cause others to believe that there is a relationship between Defendant and EMI.

77.     Defendant's wrongful acts have permitted and will permit it to receive substantial profits based upon the strength of EMI's reputation and the substantial goodwill it has built up in the EMI Marks.

78.     As a direct and proximate result of Defendant's wrongful conduct, EMI has been and will continue to be damaged.

79.     Unless an injunction is issued enjoining any continuing or future use of the EMI Marks, such continuing or future use is likely to continue to cause confusion and thereby irreparably damage EMI.  EMI has no adequate remedy at law.  Accordingly, EMI is entitled to an injunction.

## FIFTH CLAIM FOR RELIEF

### Common Law Unfair Competition

80.     EMI incorporates by reference the factual allegations set forth above.

81.     EMI has expended significant time and expense in developing the EMI Marks and the high-quality products and services it markets and sells under those marks.  The EMI Marks have been very successful and have developed a substantial reputation and goodwill in the marketplace.

Complaint
Demand for Jury Trial

82.     Through its wrongful conduct, Defendant has misappropriated EMI's efforts and are exploiting the EMI Marks and EMI's reputation to market and sell its services under the EVOLVING ENTREPRENEUR mark.  These actions constitute unfair competition.

83.     As a direct and proximate result of Defendant's wrongful conduct, EMI has been and will continue to be damaged.

84.     Unless an injunction is issued enjoining Defendant's unfairly competitive conduct, EMI will continue to be damaged irreparably.  EMI has no adequate remedy at law. Accordingly, EMI is entitled to an injunction.

85.     On information and belief, Defendant has acted willfully, intentionally and maliciously, such that EMI is entitled to punitive damages.

### PRAYER

WHEREFORE, EMI prays for the following relief:

A.     An injunction ordering Defendant, and its officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with her, who receive actual notice of the injunction order by personal or other service, to:

    i.     cease all use and never use the EVOLVING ENTREPRENEUR mark, the EMI Marks, or any or tits mark likely to cause confusion with the EMI Marks, in connection with the promotion, advertising, offering for sale, or sale, of any products or services;

    ii.     never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, or sold by Defendant are in any manner associated or connected with EMI, or are licensed, approved, or authorized in any way by EMI;

    iii.     never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that Defendant, or any of its goods or services, are related to, authorized, or sponsored by EMI;

Complaint
Demand for Jury Trial

iv.       cease all use of the *evolvingentrepreneur.com* domain name and any similar domain names, and never register any domain names that contain any of the EMI Marks, or any domain names confusingly similar to any of the EMI Marks;

v.        cease all use of the Social Media Accounts and any similar accounts or social media websites, and never register any social media account that contains any of the EMI Marks, or any social media account confusingly similar to any of the EMI Marks;

vi.       never unfairly compete with EMI in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the production, distribution, marketing, and/or sale of products and services bearing any of the EMI Marks;

vii.      withdraw with prejudice the Infringing Entrepreneur Trademark Application; and

viii.     never apply for or seek to register any mark that is likely to cause confusion with any of the EMI Marks.

B.        An order pursuant to 15 U.S.C. § 1116(a), directing Defendant to file with the Court and serve upon EMI's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant have complied with the injunction.

C.        An order transferring to EMI all domain names, including but not limited to *evolvingentrepreneur.com*, in Defendant's possession, custody, or control that include the word "entrepreneur" or any misspelling thereof, or are otherwise confusingly similar to, or contain any of, the EMI Marks.

D.        An order finding that, by the acts complained of above, Defendant has infringed EMI's federally registered trademarks in violation of 15 U.S.C. § 1114.

Complaint
Demand for Jury Trial

E.      An order finding that, by the acts complained of above, Defendant has created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

F.      An order finding that, by the acts complained of above, Defendants have diluted the EMI Marks in violation of N.Y. Gen. Bus. § 360-l.

G.      An order finding that, by the acts complained of above, Defendant has engaged in common law trademark infringement.

H.      An order finding that, by the acts complained of above, Defendant has engaged in common law unfair competition.

I.      An order awarding EMI damages as follows:

    i.      Pursuant to 15 U.S.C. § 1117(a), EMI's actual damages, as well as all of Defendant's profits or gains of any kind from its acts of trademark infringement, false designation of origin, and unfair competition, including a trebling of those damages;

    ii.      Punitive damages pursuant to N.Y. Gen. Bus. § 360-m; and

    iii.      Punitive damages pursuant to New York common law.

J.      An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case and awarding EMI its reasonable attorneys' fees.

K.      An order pursuant to 15 U.S.C. § 1117(a) awarding EMI all of its costs, disbursements, and other expenses incurred due to Defendant's unlawful conduct.

L.      An order awarding EMI pre-judgment interest.

M.      An order awarding EMI such other relief as the Court deems appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Complaint
Demand for Jury Trial

Dated:  May 24, 2016      Respectfully submitted,

By    /s/ Jessica L. Bengels

Perry J. Viscounty*
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
(714) 540-1235 / (714) 755-8290 Fax
*perry.viscounty@lw.com*

Jennifer L. Barry*
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400 / (858) 523-5450 Fax
*jennifer.barry@lw.com*
*\*pro hac vice applications to be submitted*

Jessica L. Bengels
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
jessica.bengels@lw.com
(212) 906-1200/(212) 751-4864

*Attorneys for Plaintiff*
ENTREPRENEUR MEDIA, INC.

Complaint
Demand for Jury Trial